UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

UNITED STATES OF AMERICA,

**REPORT AND
RECOMMENDATION**

v.

6:24-MJ-04036 CDH

JONATHAN WOODY,

Defendant.

---

## BACKGROUND

On June 27, 2024, defendant Jonathan Woody ("Defendant") moved for a competency evaluation pursuant to 18 U.S.C. § 4241(a) and for a psychiatric or psychological evaluation pursuant to 18 U.S.C. § 4241(b).  (Dkt. 14; Dkt. 15). Magistrate Judge Marian W. Payson, to whom the matter was then assigned, heard oral argument (Dkt. 18) and entered an Order on July 9, 2024, granting Defendant's motion (Dkt. 17).  Judge Payson found that there was reasonable cause to believe that Defendant could be suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to assist properly in his defense.  (Dkt. 17 at 1).

Defendant was transported to Metropolitan Detention Center in Brooklyn, New York ("MDC Brooklyn"), where from July 24, 2024, to September 4, 2024, he underwent a psychiatric examination.  (Dkt. 19).  Dr. Ashley Jenkins, Psy.D., prepared a detailed report setting forth the results of the evaluation, and concluding

- 1 -

that Defendant possesses "a basic rational and factual understanding of the proceedings against him and has the capacity to assist legal counsel in his defense, and with the support of his lawyer, he can rationally make decisions regarding legal strategy." (*Id*. at 18-19).

Judge Payson held a competency hearing on November 15, 2024, at which the government called Dr. Jenkins as a witness and entered her report into evidence. (Dkt. 23).[1] Defendant then filed a supplemental motion for an updated psychiatric evaluation.  (Dkt. 24).  Judge Payson entered an Order on November 26, 2024, granting Defendant's motion and ordering a further psychiatric evaluation.  (Dkt. 26).

Defendant was returned to MDC Brooklyn and underwent a supplemental psychiatric evaluation, from December 10, 2024, to January 7, 2025.  (Dkt. 29).  Dr. Jenkins prepared a second report setting forth the results of the supplemental evaluation, and again concluded that Defendant "possess[es] a basic rational and factual understanding of the proceedings against him and has the capacity to assist legal counsel in his defense, and with the support of his lawyer, he can rationally make decisions regarding legal strategy." (*Id*. at 25).

This matter was reassigned to me on January 14, 2025.  (Dkt. 27).  After affording defense counsel time to review the second report and review it with Defendant (*see* Dkt. 30; Dkt. 32), I held a continuation of the competency hearing on March 20, 2025 (Dkt. 33).  The government again called Dr. Jenkins as a witness and

---

[1]     I was present at the November 2024 competency hearing in my then-capacity as a Court employee and personally observed Dr. Jenkins' testimony.

submitted into evidence her second report. I offered Defendant the opportunity to "testify, to present evidence, to subpoena witnesses . . . and to confront and cross-examine witnesses" at the hearing pursuant to 18 U.S.C. § 4247(d).

**DISCUSSION**

## I.    Scope of Magistrate Judge Authority

"It is unclear whether a magistrate judge has the authority to rule on a litigant's competency." *United States v. Mibbs*, No. 21-CR-6131-EAW-MJP-2, 2024 WL 4350435, at \*1 (W.D.N.Y. Aug. 27, 2024) (citation and alteration omitted), *adopted*, 2024 WL 4347340 (W.D.N.Y. Sept. 30, 2024); *see also United States v. Foltz*, No. 16-MJ-511, 2018 WL 2175554, at \*3 n.1 (W.D.N.Y. May 9, 2018) (observing that "the authority of a magistrate judge to issue competency decisions with or without a referral order has not been addressed by the Second Circuit" and noting conflicting authority), *adopted*, 2018 WL 2192198 (W.D.N.Y. May 11, 2018).  "In light of the lack of guidance from the Second Circuit and in an abundance of caution, this Court's findings are set forth in a Report and Recommendation and not a Decision and Order."  *Id.*; *see also Mibbs*, 2024 WL 4350435, at \*1 ("the common practice of magistrate judges outside of this District and within it is to issue a report and recommendation where competency is concerned") (internal citation omitted).

## II.    Competency Determination

Federal courts apply "a two-prong test for determining competency to stand trial. The defendant must have (1) 'sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding' and (2) 'a rational as well

as factual understanding of the proceedings against him.'" *United States v. Nichols*, 56 F.3d 403, 410 (2d Cir. 1995) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).  "A mental impairment, without more, does not render a defendant incompetent to stand trial." *United States v. Pfeiffer*, No. 16-CR-23-RJA-MJR, 2018 WL 8544778, at *2 (W.D.N.Y. Dec. 18, 2018), *adopted*, 2019 WL 2435487 (W.D.N.Y. June 11, 2019).  "In determining competency, the court may consider medical opinion as well as its own observation of the defendant's conduct." *United States v. Morrison*, 153 F.3d 34, 46 (2d Cir. 1998).  Pursuant to 18 U.S.C. § 4241(d), the Court applies a preponderance of the evidence standard when making a competency determination.

The Court has carefully assessed Dr. Jenkins' thorough and detailed reports, as well as the testimony presented at the initial competency hearing and the continuation thereof.  The Court has also taken into account its own observations of Defendant at court appearances.  Having carefully considered the parties' arguments and the evidence of record, the Court concludes that Defendant is presently competent to stand trial.

The Court begins its analysis with the psychiatric testing performed by Dr. Jenkins.  Dr. Jenkins explained in her first report that she had administered various psychological tests to Defendant.  Of note, the Validity Indicator Profile (VIP), which "serves as a validity indicator for concurrently administered cognitive and intellectual tests," indicated an invalid and inconsistent response style on the nonverbal subtest, indicating that Defendant's performance was not an accurate representation of his ability.  (Dkt. 19 at 7-8).  Consistent with this finding,

Defendant's results on the Minnesota Multiphasic Personality Inventory-2-Restructured Form (MMPI-2-RF) and Trauma Symptom Inventiory-2 (TSI-2) were determined to be invalid. (*Id*. at 11). His results on the Wechsler Adult Intelligence Scale-Fourth Edition (WAIS-IV) were determined to "likely [be] an underrepresentation of his true abilities." (*Id*. at 9-10). On the Structured Inventory of Malingered Symptomatology (SIMS), which is "used to determine if an individual is feigning symptoms," Defendant's results were indicative of malingering. (*Id*. at 10). The Test of Premorbid Functioning (TOPF) indicated that Defendant's baseline abilities are in the low average range compared to peers. (*Id*.). Overall, the psychiatric testing set forth in the first report supports the conclusion that while Defendant has some genuine mental impairment, his reported symptoms are exaggerated and not reflective of his true abilities and understanding.

Dr. Jenkins' first report also recounts her discussions with Defendant regarding his understanding of the charges against him and the legal process. Defendant was able to identify the charge against him and explain what it meant. (*Id*. at 16). He was able to understand legal concepts, and retained information provided to him by Dr. Jenkins about court proceedings. (*Id*. at 17-18). The first report thus supports the conclusion that while Defendant has some cognitive impairments, he is capable of understanding the proceedings against him, and of assisting and consulting with his counsel. It further supports the conclusion that claims of greater impairment by Defendant are likely not a reflection of his genuine abilities and understanding.

At the November 2024 competency hearing, Dr. Jenkins reaffirmed the findings

contained in her first report.  However, when questioned by defense counsel about whether her conclusions would change if she learned that Defendant had been experiencing frequent auditory hallucinations, beyond what he had previously reported, Dr. Jenkins could not rule out the possibility that such information would change her opinion without performing an updated evaluation.  Defense counsel subsequently advised the Court that Defendant had reported that he "experiences auditory hallucinations multiple times a day and that the voices are demonic, tell him to do things he does not want to do, and interfere with his ability to concentrate on court proceedings and with his functioning, more generally."  (Dkt. 26 at 1-2 (citing Dkt. 24)).  It was that representation that caused Judge Payson to order a supplemental psychiatric evaluation.  (*See id.*).

The supplemental evaluation, as documented in the second report, addresses the issue of Defendant's reported auditory hallucinations.  Dr. Jenkins observed that while Defendant reported hearing five voices, "two or three of which are demonic," he provided "inconsistent and discrepant descriptions of the voices" and "did not appear to be responding to internal stimuli or visibly distracted."  (Dkt. 29 at 23).  Defendant also "reported no distress from the reported auditory hallucinations."  (*Id.*).  Dr. Jenkins concluded that Defendant's reports of auditory hallucinations were "inconsistent and exaggerated[.]"  (*Id.* at 25).  Moreover, Defendant "denied his auditory hallucinations interfering with his ability to work [with] or trust his defense counsel or understand legal proceedings."  (*Id.*).

"During interviews, following encouragement and being provided education,

- 6 -

[Defendant] did appear knowledgeable about his case, the law, and his rights. Additionally, he evidenced an ability to weigh options and decision-making skills." (*Id*. at 24). Defendant also was not observed to be suffering from "any delusions or other serious psychiatric symptoms that would impair his ability to form a trusting, consultative relationship with an advising attorney, if he chooses to[.]" (*Id*.).

The second report further sets forth additional psychiatric testing that was performed on Defendant. This additional psychiatric testing, like the testing performed during the first psychiatric evaluation, supports the conclusion that Defendant is exaggerating his symptoms. Defendant's results on the Structured Interview of Reported Symptoms-2 (SIRS-2) "suggest[ed] he intentionally feigned psychological symptoms throughout the administration" of the test. (*Id*. at 12). For example, Defendant's "score on the Improbable or Absurd (IA) scale was elevated to the definitively exaggerating range, indicating that [Defendant] reported preposterous symptoms that are almost never observed in clinical populations[.]" (*Id*. (internal quotation marks omitted)). Defendant's response on the MMP1-3 (an updated version of the MMP1-2-RF) also "indicate[d] a pattern of exaggerated responding." (*Id*. at 13-14).

At the continued competency hearing in March 2025, Dr. Jenkins testified consistent with her second report. She explained that she had clinical experience with individuals experiencing persistent auditory hallucinations, and that Defendant's behavior during her meetings with him was not consistent with his reports regarding the alleged voices. For example, individuals experiencing

persistent auditory hallucinations may be distracted and have difficulty keeping up with conversations.  They may also talk to themselves without being able to stop, or physically place their hands or other items over their ears to try to block out the sounds.  Neither Dr. Jenkins nor any other staff at MDC Brooklyn observed Defendant engaging in any of the behaviors that would be expected from an individual who was constantly hearing voices in his or her head.

Defense counsel questioned Dr. Jenkins at length regarding Defendant's reported auditory hallucinations.  Dr. Jenkins confirmed that it was her opinion that Defendant's auditory hallucinations, to the extent he is experiencing them, do not appear to impact his understanding of the charges against him.  Dr. Jenkins explained that during the competency interviews, Defendant was never distracted, never reported that a particular voice was telling him any particular thing, and in fact never mentioned his auditory hallucinations at all.  She further explained that her observations were not consistent with Defendant's report that he was hearing voices "all day, every day."

The Court found persuasive Dr. Jenkins' testimony that Defendant's behavior is not consistent with an individual who is experiencing persistent, distracting auditory hallucinations. Dr. Jenkins' testimony was consistent with the Court's own observations of Defendant during Court appearances, where—as described by Dr. Jenkins—he has not appeared distracted or unable to pay attention, nor has he exhibited signs of distress or any indication that he is experiencing auditory hallucinations.

There was also some discussion at both the initial competency hearing and the continuation thereof regarding Defendant's potential confusion about the gender of the alleged victim in this case. In particular, while the alleged victim is identified in the criminal complaint as male, Defendant referred to the individual as female. Dr. Jenkins explained at the continued competency hearing that she did not view this issue as particularly relevant or necessary to the evaluation she was performing or to the question of competency. The Court found Dr. Jenkins' testimony on this matter persuasive. The Court has no information regarding the gender identity or presentation of the alleged victim, and no reason to conclude that Defendant's belief that this individual is female is evidence of incompetency. As Dr. Jenkins testified, there are many other explanations apart from incompetency for this discrepancy.

The Court has further considered defense counsel's argument that the primary issue is Defendant's ability to assist in his defense. The Court does not disagree that there may be some barriers in this regard. But Dr. Jenkins concluded, and persuasively explained, that there are steps that can be taken to overcome those barriers. (*See, e.g.,* Dkt. 29 at 25).

In sum, while Defendant has a mental impairment, and while he may be experiencing some degree of auditory hallucinations, the evidence does not support the conclusion that he is presently incompetent to stand trial. Accordingly, based on the medical evidence and the Court's own observations, it is recommended that Defendant be found competent to stand trial, because the preponderance of the

evidence demonstrates that he is not "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense[.]"  18 U.S.C. § 4241(a).

## CONCLUSION

For the foregoing reasons, it is recommended that Defendant be found competent to stand trial.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Federal Rules of Criminal Procedure 45 and 59(b), and Local Rule of Criminal Procedure 59.

**Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation waives the right to appeal the District Court's Order.** *See Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, 596 F.3d 84, 92 (2d Cir. 2010).

The District Court will ordinarily refuse to consider *de novo* arguments, case law, and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance.

Pursuant to Local Rule of Criminal Procedure 59(c)(2), written objections "shall

specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." **Failure to comply with these provisions may result in the District Court's refusal to consider the objection**.

**SO ORDERED**.

COLLEEN D. HOLLAND
United States Magistrate Judge

Dated: Rochester, New York
April 18, 2025

- 11 -